HON. WILLIAM H. HUNT, } Associate Justices.
HON. HORACE R. BUCK, }

GIDDINGS, RESPONDENT, *v.* HOLTER ET AL., APPEL-
LANTS, and GIDDINGS, RESPONDENT, *v.* CASTLE
LAND COMPANY, APPELLANT.

[Submitted February 24, 1897. Decided March 8, 1897.]

*Covenant of Title—Corporation, Liability of Trustees on Re-
port.*

COVENANT.—The United States is a "person" included in the terms of a covenant
against "all and every person or persons whomsoever lawfully claiming or to claim
the same."

CORPORATION.—*Trustees' Liability.*—The trustees of a corporation who filed a report
which did not specify as a debt of the company its liability on a covenant of title, are

not liable for a false report, if at the time the report was filed, the breach of the covenant was not known to them. (§ 460, Fifth Division of the Compiled Statutes, § 451 of the Civil Code construed.)

SAME.— A report filed by the trustees of a corporation which states that the capital was paid in full, is not a "false report," because of the mere fact that property for which it was issued has decreased in value.

SAME.—Trustees of a corporation who have filed a false report are not liable for debt of the corporation theretofore contracted. (§ 460 and 463, Fifth Division of the Compiled Statutes, being § 445 of the Civil Code construed.)

*Appeal from District Court, Lewis and Clarke County. Henry N. Blake, Judge.*

ACTION by Silas M. Giddings against A. M. Holter and others and the Castle Land Company. From a judgment for plaintiff as against all the defendants, the company and the other defendants bring separate appeals. Affirmed as to the company, and reversed as to the other defendants.

Statement of the case by the justice delivering the opinion.

Action on covenants of warranty, and against the trustees of a corporation for failure to file annual reports and for a false report. The agreed statement of facts upon which this case was tried is substantially as follows: On August 5, 1890, one Quinn entered 80 acres of government land, lying adjacent to the town of Castle, in Meagher county, Montana, with Sioux half-breed scrip, and the next day conveyed the same to one Bullard. On December 16, 1890, the Castle Land Company was incorporated and organized. Bullard, having had the land platted as the King addition to the town of Castle, conveyed it on June 23, 1891, to said company. On May 1, 1891, the Castle Land Company conveyed a vacant lot in said addition to one Giddings for $1,500, and on July 3, 1891, another vacant lot therein for $800. The deeds of conveyance contained the following covenant: "And the said party of the first part and its successors do hereby covenant that it will forever warrant and defend its right, title and interest in and to the said premises, and the quiet and peaceable possession thereof, unto the said party of the second part, his heirs and assigns, against the acts and deeds of the said party of the first part, and all and every person or persons whomsoever

lawfully claiming or to claim the same." Subsequently Quinn's entry was contested in the United States Land Office, and on April 5, 1894, it was canceled by the secretary of the interior. On January 22, 1895, one Wilson, in behalf of the Castle Land Company, entered the King addition with soldiers' additional homestead scrip. The Wilson entry was also contested, and while the present action was pending it was canceled by order of the secretary of the interior. The fact of the cancellation of the Wilson entry does not appear in the record, but the lower court took judicial notice of it. Holter, Parchen, Seligman and King are now and were the directors or trustees of the Castle Land Company from the time of its organization. In the years 1891, 1892 and 1893, no report was filed by the company as required by section 460, page 728, Fifth Division of the Compiled Statutes 1887. Said section is as follows: "Every such company shall, annually, within twenty days from the first day of September, make report, which shall be published in some newspaper published in the town, city or village, or if there be no newspaper published in said town, city or village, then in some newspaper published nearest the place where the business of said company is carried on, which shall state the amount of capital and of the proportion actually paid in and the amount of existing debts, which report shall be signed by the president and a majority of the trustees, and shall be verified by the oath of the president or secretary of said company, and filed in the office of the clerk of the county where the business of the company shall be carried on, and if any of said company shall fail to do so, all the trustees of the company shall be jointly and severally liable for all debts of the company then existing, and for all that shall be contracted before such report shall be made. No liability shall attach to any trustee, or board of trustees, by virtue of the provisions of this section, for a failure to cause to be published in a newspaper the report in this section mentioned, if within the time herein mentioned said trustee, or board of trustees or company, shall annually cause said report to be filed in the office of the county clerk and recorder

of the county in which the business of the said company is carried on, as declared in its certificate of incorporation." On September 4, 1891, the Castle Land Company, by its trustees aforesaid, filed a report as to the affairs of the company, which stated that all the capital stock, in the sum of $500,000, was fully and actually paid in. "At the time said last-named report was made, the only property, money, or credit, or other thing whatsoever, which had been paid in towards the payment of the said capital stock of the said company, was the interest which the company had in and to the King addition to the town of Castle, derived through said Quinn entry, which had been canceled as aforesaid." Section 463, page 729, Fifth Division of the Compiled Statutes 1887, is as follows: "If any certificate or report made or public notice given by the officers of any such company in pursuance of the provisions of this chapter, shall be false in any material representation, all the officers who shall have signed the same shall be jointly and severally liable for all the debts of the company contracted while they are stockholders or officers thereof." Giddings never took any actual possession of the lots. In December, 1894, he brought suit against the Castle Land Company, on the covenants in his deeds, to recover the purchase price he had paid for the two lots, with interest from the respective dates of his deeds. The trustees of the company were made defendants in the suit, and judgment was demanded against them by reason of their failure to file reports in 1891, 1892 and 1893, and the report filed in 1894, alleged to have been false. Judgment was rendered in the district court in accordance with the prayer of plaintiff. The appeal is from the judgment.

*Cullen & Toole, Sanders & Sanders* and *M. Bullard*, for Appellants.

*F. E. Stranahan*, for Respondent.

BUCK, J.—The first question for decision is whether the covenant in plaintiff's deeds embraces the United States. The

covenant is against ''all and every person or persons whomsoever, lawfully claiming, or to claim the same.'' We are of the opinion that the United States is a person, within the scope of its language. *Republic of Honduras* v. *Soto,* 112 N. Y. 310, 19 N. E. 845; *Stanley* v. *Schwalby,* 147 U. S. 517, 13 Sup. Ct. 418; *Peters* v. *Grubb,* 21 Pa. St. 455.) We are also of the opinion that when the Quinn entry was canceled the contingent obligation of the Castle Land Company on its covenant became fixed. Manifestly, the company had abandoned any right to the King addition under said entry when this suit was instituted. (See *Resser* v. *Carney* (Minn.) 54 N. W. 89.) The judgment, then, as to the Castle Land Company, is affirmed.

We shall now discuss the liability of the defendant trustees. The main question is whether or not the liability by virtue of the covenant alone is a debt, within the contemplation of section 460, Fifth Division of the Compiled Statutes. The section requires a corporation to report annually its ''existing debts.'' The liability incurred by the Castle Land Company when it executed the deeds to plaintiff, as respondent himself contends, was not capable of enforcement in the courts until the Quinn entry was canceled, on April 5, 1894. Appellants' counsel urge that any right of action against the defendant trustees because of failures of the corporation to file reports in the years 1891, 1892 and 1893 is barred by the statute of limitations. Answering this contention, counsel for respondent says in his brief: ''The difficulty with their argument is that their premises are wrong, for, while it is true that the fee had not passed out of the United States, yet the federal government had permitted the entry, and the receipt of the Register and Receiver had issued, and was the property of the Castle Land Company up to the time of its cancelation by the Department of the Interior, on April 5, 1894. During that period of the life of the certificate, the courts were closed to the plaintiff by section 542 of the First Division of the Compiled Statutes of the State of Montana, which is as follows : 'The receipt or certificate signed by the register or receiver of any U. S. Land Office of the entry or purchase of any tract of

land, or of any tract by any land warrant, is *prima facie* evidence in the courts of this state that the title to the land mentioned or described in said receipt or certificate, is in the person named therein, his heirs or assigns.' * * * And what would have been the plaintiff's standing here had he himself attacked and broken down his own title which he held through the receipt, and which the defendant company had warranted to defend in him?" The argument of counsel for appellants on this question of limitations is a somewhat inconsistent one. They insist that the covenant liability at the time of the execution of the deeds was not an existing debt, within the meaning of section 460, but, in point of fact, was so contingent in character that even the respondent could not have regarded himself as a creditor of the company at that time. Yet when they invoke the statute of limitations they assume their liability (on the theory that any breach of a covenant of warranty occurs at the moment the covenant is executed) was one in actual existence when the failures to report in 1891-92-93 occurred. In the view we take of this case, it becomes unnecessary to decide any question as to the statute of limitations, but we refer to the argument on the subject because it practically sheds light on the point of whether the covenant, at the time of its execution, was an existing debt within the contemplation of section 460. When the deeds were executed, for all that appears in the record, neither the grantee nor the grantor knew of, or had any reason to know of, any defect in the title to the lots. As to the exact time when the Quinn entry was first assailed, the record is silent. Presumably, both parties to the covenant regarded the title through Quinn as good until canceled on April 5, 1894. The status of liability under the covenant must be regarded, therefore, by us, as the same at the time of each failure to report in the years 1891, 1892 and 1893.

Section 460 does not require a corporation to report, as existing debts, unliquidated demands against it, founded on torts. Our section 460 is substantially the same as that of New York, from which state it was taken. In a case involving a con-

struction of the New York statute (*Chase* v. *Curtis*, 113 U. S. 452, 5 Sup. Ct. 554), the court said : "The statute involved in this discussion is not a remedial statute, to be broadly and liberally construed, but is a penal statute, with provisions of a highly rigorous nature, to be construed most favorably for those sought to be charged under it, and with strictness against their alleged liability. Under such a rule of construction, its language is limited by its own terms to a liability on the part of the trustees to debts of the corporation existing and arising *ex contractu.*" It is true that a liability for a debt based upon a covenant in a deed, even before the debt is liquidated, is one *ex contractu.* But it is always somewhat difficult to clearly define the boundary between an unliquidated liability resulting from a breach of contract and one flowing from a tort. In *Mill Dam Foundry* v. *Hovey*, 21 Pick. 455, involving a claim for unliquidated damages for breach of a contract, Chief Justice Shaw uses the following language : "For though a question was made, whether such a claim for unliquidated damages is a debt, within the meaning of the statute, we do not think it admits of a reasonable doubt that all such claims for damages were intended to be included in the term 'debts.' " In *Carver* v. *Manufacturing Co.*, 2 Story 432, Fed. Cas. No. 2,485, Mr. Justice Story said : "I follow out the doctrine of the case of *Mill Dam Foundry* v. *Hovey*, 21 Pick. 455, which, as far as it goes, disclaims the interpretation of the word 'debt' as limited to contracts for the payment of determinate sums of money. Passing that line, it does not seem to me easy to say, that if cases of unliquidated damages may be treated as debts, because they end in the ascertainment of a fixed sum of money, that we are at liberty to say, that the doctrine is not equally applicable to all cases of unliquidated damages, whether arising *ex contractu* or *ex delicto.*" The supreme court of Iowa in *Warner* v. *Cammack*, 37 Iowa 642, held that the liability resulting from a fraud perpetrated was a debt, in the sense of the term "debts contracted," contained in the homestead statute of that state. The court said: "We hold that it was a debt. And this because the plaintiff

in that action might have waived the tort, and brought his action for money paid to the use of the defendant therein." In *Green* v. *Easton* (Sup.) 26 N. Y. Supp. 553, the court held that an unliquidated claim for a breach of contract of employment was a debt, within the meaning of the New York statute, which, as we have stated, is almost identical with section 460. But in *Victory Etc. Manufacturing Co.* v. *Beecher*, 26 Hun. 48, the court said in reference to the same statute : "The other question under the statute is, whether the allegations of the complaint show debts existing against the corporation, within the meaning of the twelfth section (chapter 40, Laws 1848). They show, undoubtedly, causes of action for breaches of contract and causes incidentally arising or resulting from such breaches, which would entitle them to recover damages against the company unless met and defeated by some sufficient defense. But it is very doubtful whether such causes of action are debts, within the meaning of the act. If they are debts, would not the company be bound to include them in the annual report of existing debts to be made under section 12 ? The statute says the report must state the amount of existing debts. Is it the intention that the report shall state, as 'existing debts,' the amount of disputed and contested claims ? If that be so, then the statute would operate in many cases as a confession of indebtedness destructive of good defenses. The words 'existing debts' must have been used in some more restrictive sense, or else the statute might operate to subject the trustees to liabilities which may not be capable of recovery against the corporation itself; for, if they are to be regarded as existing debts, then their omission would be fatal to the validity of the report.    *    *    *    The courts are bound to observe the distinction of law between debts and demands or claims for damages." The court also said : "The courts have held that certain kinds of liability, which must ultimately ripen into debts are not debts, within the meaning of the act of 1848 and similar acts. (*Oviatt* v. *Hughes*, 41 Barb. 541; *Whitney Arms Co.* v. *Barlow*, 68 N. Y. 34.)" The case of

*Green* v. *Easton*, *supra*, it seems to us, is apparently in conflict with *Manufacturing Co.* v. *Beecher*, *supra*. But a distinction can be drawn between a claim which actually exists in the form of a debt—even though an unliquidated one—upon the breach of a contract, and a liability not ripened even into the semblance of actual debt, but merely possible as a debt from the existence of an agreement or contract. The contract before us does not fall within the rule laid down in *Green* v. *Easton*. In that case the facts evidently disclosed a conceded breach of contract prior to the time of filing the corporate report. In our opinion, in no sense within the meaning of "existing debts," as that term is used in section 460, was this covenant in these deeds a debt in 1891, 1892 and 1893. It constituted a contingent obligation only, not ripened into a debt during the period of the contest of the Quinn entry. To hold that this section contemplates that the trustees of a corporation should be held liable for failures to report mere possibilities of debt, even though founded on contracts, would be a harsh doc-trine. Such a doctrine would seriously impede the business operations of corporations. It would practically necessitate the inclusion in their annual reports of details of a character of entimes trivial and wholly immaterial. It would fasten a responsibility of so burdensome a nature on a trustee of a corporation that no man of ordinary prudence would agree to accept such a position. It would violate the rule laid down in *Chase* v. *Curtis*, that this section "is a penal statute, with provisions of a highly rigorous nature, to be construed most favorably for those sought to be charged under it, and with strictness against their alleged liability." We are clearly of the opinion that the defendant trustees are not liable for the failure of the Castle Land Company to make reports in the years 1891, 1892 and 1893.

The next question for our consideration is whether or not the report of the company made in 1894 was a false report. From the record, we cannot say that it was false. It in no wise appears, even inferentially, that the King addition did not cost the Castle Land Company the amount of money for

which it issued its capital stock.    If the capital stock was paid
in full, the mere fact that the land representing it had become
valueless would not render its officers or stockholders liable for
any debts of the company.    This action of plaintiff's
is not one to make stockholders liable for unpaid stock.
The allegations of the complaint show that the plaintiff
seeks to recover from the trustees solely on the ground
that they made a false report.    He relies upon section
463 of the Fifth Division of the Compiled Statutes of Montana.
Even, however, if the report is false, can plaintiff avail him-
self of any false statement in it?    The contract of the Castle
Land Company under the covenant of warranty had ripened
into an actual debt liability, and plaintiff's right to sue had
accrued, before this report of 1894 was made.    Section 463
is strictly a penal statute, and we agree with the interpretation
placed upon it by the supreme court of New York in *Torbett*
v. *Godwin* (Sup.) 17 N. Y. Supp. 46; the Montana section 463
being identical with section 21 (chapter 611, Laws 1875) of
the New York statute construed in said case.    The debts for
which officers of a corporation who make a false report are
liable are not those contracted by the corporation prior to the
making of a false report, but those contracted subsequent
thereto.    This is a reasonable and fair construction of this
section under the rule heretofore announced for the construc-
tion of penal statutes of this character.    The judgment of the
lower court as to the defendant trustees was erroneous, and
must be reversed.    The case is remanded, with directions to
the district court to render judgment for the defendant
trustees.

Two separate appeals were taken from the lower court's de-
cision,—one in behalf of defendant trustees, and the other in
behalf of the Castle Land Company,—and two transcripts are
in this court.    The costs of appeal in the one numbered 842
must be paid by the respondent, and in the one numbered 843
must be taxed to the Castle Land Company.

*Remanded.*

HUNT, J., concurs.