MANHATTAN TRUST CO., TRUSTEE, RESPONDENT, *v.* DAVIS, ET AL., APPELLANTS.

[No. 1,133.]

[Submitted July 10, 1899.   Decided October 24, 1899.]

*Foreign Corporations—Conditions Precedent to Transaction of Business—Papers Required to be Filed—In What Counties Necessary—Contracts—Penal Statutes—Construction.*

1. The requirements of Compiled Statutes 1887, Sections 442-444, that a foreign corporation shall, before doing any business of any kind within the territory, file certain papers with the recorder of the county where it intends to do, or is doing, business, and invalidating its contracts and imposing on it a forfeiture of a certain sum per day during the period of its neglect, and Section 445, requiring it to file an annual report in the county where its business is carried on, are complied with by filing the same with the recorder of the county where its principal office for doing business within the state is located, and filings need not be made in every county where it may transact any item of business.
2. Forfeitures of contracts not immoral or against public policy are not to be declared unless the law under which the forfeitures are claimed is so clear and direct in language that it admits of but one construction by which the contract sued upon must be adjudged void and unenforceable.
3. A statute requiring foreign corporations, before doing any business of any kind within the state, to file certain papers in certain public offices, and prescribing penalties against the corporation which attempts, or commences, to do business in the state without first having filed the necessary papers, is, in a sense appertaining to construction, a "penal" statute, and is to be construed strictly—not liberally.
4. Under the rules of construction laid down in Section 539, Division I, and Sections 207, 208, Division V, Compiled Statutes 1887, words, which are repugnant to the context, and to the real object of a statute, will not be interpolated.

*Appeal from District Court, Missoula County; F. H. Woody, Judge.*

ACTION by the Manhattan Trust Company, trustee, against Mary M. and Smith Davis.   Judgment for plaintiff, and defendants appeal.   Affirmed.

Action to foreclose a certain mortgage. On November 10, 1892, the Northwestern Guaranty Loan Company, a Minnesota corporation, loaned to Mary M. Davis and her husband, appellants herein, $2,350, for which loan the corporation accepted the joint promissory note of appellants for $2,350, dated at Minneapolis, Minn., November 7, 1892, and due three years after date, with interest at 6 per cent. per annum. To secure the payment of this loan the Davises executed and delivered to the Northwestern Guaranty Loan Company a mortgage upon certain lots in the city of Missoula, which mortgage was recorded with the county recorder of Missoula county. Thereafter, on November 27, 1892, the Northwestern Guaranty Loan Company, for value, and in the regular course of business, transferred said note to the respondent herein, the Manhattan Trust Company of New York, as trustee, by indorsement before maturity, and by a written instrument on the same day duly assigned the said mortgage to the trust company, as trustee. Thereafter, in June, 1896, the said Manhattan Trust Company, as the indorsee of the note of the Davises and as the assignee of the mortgage, brought this action to enforce its claim by foreclosure of the mortgage above described. The plaintiff, by an amended complaint, averred in detail that the Northwestern Guaranty Loan Company, its predecessor in title, had strictly complied with all of the provisions of the constitution and laws of the state of Montana in relation to the terms and conditions upon which foreign corporations might transact and carry on business within the state of Montana, and that such compliance had been had prior to the mortgage loan involved herein. The allegation in respect to a compliance with the laws pertaining to foreign corporations was, in effect, that the Northwestern Guaranty Loan Company had filed in the office of the secretary of the state of Montana, and in the office of the county recorder of the county of Lewis and Clarke, in which county said corporation intended to carry on and transact business, a

duly authenticated copy of its certificate of incorporation, and also a statement showing the name of the corporation, and the location of its principal office or place of business within the state of Montana, at the city of Helena, county of Lewis and Clarke. The allegation is also specific in relation to other matters embraced in the provisions of sections 442 and 443 of Chapter XXIV., Fifth Division, Compiled Statutes of Montana, (1887.) The amended complaint did not state, however, that any certificates, papers, or statements had been filed by the corporation in the office of the clerk and recorder of Missoula county, wherein the loan was made and the note and mortgage were executed.

The defendants demurred generally and specially to the amended complaint. The demurrer was overruled, whereupon they filed an answer, the substance of which is stated as follows by defendants' counsel in their brief: "Denying that the Northwestern Guaranty Loan Company had complied with the laws of Montana respecting foreign corporations, requiring them, before doing business within the state, to file certain papers, certificates and statements in the office of secretary of state, and of the clerk and recorder of the county wherein they intended to carry on business, and alleging that the Northwestern Guaranty Loan Company established an office in the city and county of Missoula, state of Montana, under the management of one Francis L. Ide, its agent and manager, and, in addition to the business done with these defendants, said Northwestern Guaranty Loan Company negotiated for loans with numerous persons in Missoula county, and maintained and conducted said place of business in Missoula county, and had numerous transactions with the citizens of Missoula county, but never, either before or since transacting said business, filed any certificates, or papers in the office of the clerk and recorder of Missoula county, such as were required by sections 442 and 443 of the General Laws of Montana (Compiled Statutes of 1887) with respect to foreign corporations doing business in the state, and because of such failure to file the said certificate the Northwestern Guar-

anty Loan Company was not authorized to do and transact business in Missoula county, and that therefore the notes and mortgage described in the complaint are and were void, and that the plaintiff is not entitled to recover therein; that the Northwestern Guaranty Loan Company was insolvent during the time it transacted business in Missoula county, and the people with whom it did business had no opportunity of knowing its financial condition, because of its failure to file the certificates required by law in the office of the clerk and recorder of Missoula county; and that the transfer of the mortgages, notes, etc., negotiated for by the Northwestern Guaranty Loan Company with the people of Missoula county, to the plaintiff, was made in fraud of the rights of the people with whom said transactions were had, and for the purpose of depriving them of the opportunity of making their just and valid defense thereto." On motion of plaintiff the court struck out the foregoing quoted substance of defendant's answer. Judgment was thereafter entered against the defendants, after the court had heard plaintiff's proofs and considered defendants' admissions.

It was admitted in the district court by the appellants (defendants) that prior to the making of the loan, and prior to the acceptance of the note or mortgage, the Northwestern Guaranty Loan Company had filed in the office of the secretary of state, and in the office of the county clerk and recorder of the county of Lewis and Clarke, Mont., all of the papers required by the constitution and laws of the state to be filed by foreign corporations before doing business in the state, while the plaintiff (respondent) admitted that the Northwestern Guaranty Loan Company had not at any time filed any of said papers, or copies thereof, in the office of the county clerk and recorder of Missoula county, which was the county in which the Northwestern Guaranty Loan Company negotiated and contracted the loan. The defendants appeal.

*Messrs. Marshall, Ogden & Ranft*, for Appellants.

*Messrs. Toole, Bach & Toole*, and *Mr. I. Parker Veazey*, for Respondent.

MR. JUSTICE HUNT, after stating the case, delivered the opinion of the Court.

When the mortgage herein involved was made, and when the note described therein was assigned, the statutory provisions prescribing what formalities should be complied with by foreign corporations before doing business within Montana were included in Chapter XXIV, Fifth Division, Compiled Statutes of 1887; so we have assumed that defendants are correct in their argument that the question for decision involves an interpretation of the statutes just referred to, and that Section 4 of an act to provide the conditions upon which foreign corporations may do business in Montana, approved March 8, 1893, repealing Chapter XXIV of the Compiled Statutes, is immaterial to the controversy.   Accordingly, we must ascertain whether the mortgage sought to be foreclosed is void for the reason that the Northwestern Guaranty Loan Company, the original mortgagee, failed to file any of the papers specified in the foreign corporation statutes referred to, in the county of Missoula, where the loan was made, the corporation having theretofore filed the papers required to be filed in the office of the secretary of state, and having also filed the papers, specified in Sections 442 and 443 of the statutes, in the office of the county recorder of Lewis and Clarke county, in which said county the corporation avers it intended to carry on and transact its business.   The material parts of Section 442 are as follows:

"All foreign incorporations or joint stock companies, organized under the laws of any state or territory of the United States, or by virtue of any special act or acts of the legislative assembly of any such state or territory, or of any foreign government, shall, before doing any business of any kind, nature, or description whatever, within this territory, file in the office of the secretary of the territory, and in the office of the county recorder of the county wherein they intend to carry on or transact business, a duly authenticated copy of their charter, or certificate of incorporation, and also

a statement, to be verified by the oath of the president and secretary of such incorporation, and attested by a majority of its board of directors, showing:

"First. The name of such incorporation and the location of its principal office or place of business without this territory; and if it is to have any place of business or principal office within this territory, the location thereof.    *    *·    *    "

The particular clause by which the appellants contend the mortgage is invalidated is as follows:

"Sec. 444.    *    *    *    Or if any foreign incorporation shall hereafter attempt or commence to do business in this territory without having first filed said statements and certificates required by this chapter, it shall forfeit to the people of Montana the sum of ten dollars for every day it shall so neglect to file the same, and all acts and contracts made by such incorporation, or any agent or agents thereof, during the time it shall so fail and neglect to file said statements and certificates, shall be void and invalid as to such incorporation. It shall be the duty of the district attorney of the county in which the business of such corporation shall be located to sue for and recover in the name of the people of the territory the penalty above provided, and the same, when so recovered, shall be paid into the treasury of such county for the use of the common schools therein."

The consequences of attempting or commencing to do business without first having filed the statements and certificates are very severe, involving, as they may, a fine of $10 for every day's neglect to file the papers, and the invalidity of the contracts as to the corporation. This may mean a very heavy fine, and the loss of rights to enforce contracts to recover immense sums of money loaned by a foreign corporation in the best of faith, and borrowed by citizens of the state who confess the justice of the corporation's claims, but who refuse to pay the money borrowed for the reason that when the creditor corporation loaned the sum it had not complied with certain statutory regulations affecting foreign corporations. We do not mean to intimate a doubt of power on the

part of the legislature of the state to prescribe regulations under which a foreign corporation can do business in the state, or to fix penalties for violations of such regulations— it is too well settled that a state has such a power—but we do say that, on principle, forfeitures of contracts not immoral or against public policy are not to be declared unless the law under which the forfeitures are claimed is so clear and direct in its language that it admits of but the one construction, by which the contract sued upon must be adjudged void and unenforceable. (Bishop on Contracts, Sec. 417.)    The statute here relied upon by the defendants prescribes penalties against the corporation which omits to file the necessary papers.    It is a penal law,—not penal in the strict sense of being a criminal law, yet penal in the sense that a duty is imposed upon a foreign corporation before it can do business in the state, and a right conferred upon the citizens to claim a contract made to be invalid for the omission to perform that duty.

In *Huntington* v. *Attrill*, 146 U. S. 657, 13 Supreme Court 224, Justice Gray, for the court, said: "In the municipal law of England and America, the words 'penal' and 'penalty' have been used in various senses.    Strictly and primarily, they denote punishment, whether corporal or pecuniary, imposed and enforced by the state, for a crime or offense against its laws.  (*United States* v. *Reisinger*, 128 U. S. 398, 402; 9 Supreme Court 99; *United States* v. *Chouteau*, 102 U. S. 603, 611.)    But they are also commonly used as including any extraordinary liability to which the law subjects a wrongdoer, in favor of the person wronged, not limited to the damages suffered.    They are so elastic in meaning as even to be familiarly applied to cases of private contracts, wholly independent of statutes, as when we speak of the 'penal sum,' or 'penalty' of a bond.    In the words of Chief Justice Marshall:   'In general, a sum of money in gross, to be paid for the nonperformance of an agreement, is considered as a penalty, the legal operation of which is to cover the damages which the party in whose favor the stipulation is made may have sustained from the breach of contract by the opposite

party.' · (*Tayloe* v. *Sandiford*, 7 Wheat. 13, 17.) Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal.'' And later on in the same opinion he wrote that a statute which imposed a ''burdensome liability'' on the officers of a corporation for their wrongful act might well be considered penal, ''in the sense that it should be strictly construed;'' yet that it was not penal in a sense that it could be enforced in a foreign state or country.

So, in a sense appertaining to construction, the statute is penal, and is to be so regarded. In *Chase* v. *Curtis*, 113 U. S. 452, 5 Sup. Ct. 554, the supreme court, in discussing the alleged liability of trustees of a corporation, formed for certain purposes under the laws of New York, for debts of the corporation, on failure to file the reports of capital and of debts required by a section of the statute of New York, said: ''But, as we have already seen, the statute involved in this discussion is not a remedial· statute, to be broadly and liberally construed; but is a penal statute, with provisions of a highly rigorous nature, to be construed most favorably for those sought to be charged under it, and with strictness against their alleged liability.''

The decisions of this court have likewise characterized analogous statutes as penal. (*Gans* v. *Switzer*, 9 Mont. 408, 24 Pac. 18; *Wethey* v. *Kemper*, 17 Mont. 491, 43 Pac. 716; *State Savings Bank* v. *Johnson*, 18 Mont. 440, 45 Pac. 662; *Giddings* v. *Holter*, 19 Mont. 263, 48 Pac. 8.) Using the word, therefore, in its judicial sense, we affirm the doctrine that it is a penal statute, and is to be construed strictly, and not liberally—wherefore no construction should be adopted which prevents the collection of a debt confessedly justly owing to a foreign corporation, unless the court is constrained

to pronounce its judgment in aid of a refusal to pay. (*Eastern B. & L. Association* v. *Bedford,* 88 Fed. 7.)

Section 442 requires a foreign corporation, *before doing business of any kind, nature, or description whatever* within Montana, to file in the office of the secretary of state, and *in the office* of the county recorder *of the county wherein it intends* to carry on business, a duly authenticated copy of its charter, etc., and a verified statement showing, among other things, the location of its principal office or place of business, and, if it is to have a place of business or principal office within this state, the location thereof. It is also provided by subsection 6 that the corporation shall file *at the same time,* and *in the same offices,* a certificate consenting to be sued in the courts of this state, and that process may be served upon some designated person.

Section 444 relates to foreign corporations doing business in the state when the law was enacted, and requires that within four months after the publication of the act they should file in the office of the secretary of state, and in *the office* of the county recorder of *the county* wherein they are respectively doing business, the statement and certificate required to be filed by section 442, *supra.* Further on it is provided that, if any foreign corporation shall hereafter *attempt or commence to do business* in the state without *having first* filed said statements and certificates, all acts and contracts made by such incorporation during the time it so failed to file said papers shall be void and invalid as to such corporation, and the corporation shall forfeit to the people of the state $10 for every day that it has neglected to file such statements, and it is made the duty of the district attorney of *the county* in which the business of such corporation shall be located to sue for the penalty provided for.

Section 445 covers the filing of an annual report by foreign corporations, "which report shall be filed in the office of the county recorder of the county wherein the business of said corporation is carried on, and a duplicate thereof in the office of the secretary of state."

In our judgment, the several foregoing provisions of the statute relating to the place wherein the corporation intends to carry on its business have reference to the location or place of doing business or principal office within the state, and not to every place where the corporation may transact any item of business therein, or in which it may do business subsequent to the first filings.      Words concerning domestic corporations found in section 446 *et seq.*, requiring a certificate to be filed in the office of the clerk of the county in which the business of the company shall be carried on, have been held to refer to the legal home of the corporation; and the reasoning which led the court in *Gans* v. *Switzer, supra,* to so hold, applies to similar expressions used throughout Chapter XXIV, pertaining to foreign corporations.      The purpose of the legislation is to compel a foreign corporation desiring to avail itself of the privilege of doing business within the state to submit itself to the jurisdiction of the courts of the state, and to advise the public of its condition, so that those willing to deal with it may be informed of its affairs, by inquiring at the recorder's office where its location has been taken up, and to punish those corporations which fail to comply with the law. Regulation is the primary policy of the legislation—and to make such regulations effective the penalties are imposed. But it never was intended that the statute could be easily invoked to prevent the enforcement of a contract which every principle of justice demands shall be upheld, if the law has been substantially complied with by the foreign corporation.

The law contemplates one filing with the secretary of state, and one filing with the county recorder of *the county* wherein the foreign corporation intends to carry on or transact business.      If, for example, a foreign corporation expects to do its business in Dawson county, and its principal office is to be there, the requisite papers must be filed with the secretary of state, and with the county recorder of Dawson county.      The statute requires these filings *before* doing *any* business of any kind, nature, or description whatever, and imposes a penalty for *any* attempt, even, or commencement, to do business in

the state *without having first* filed the statements and certificates required. Clearly, therefore, the statute contemplates and demands a full compliance with the law before even an attempt at business can be made. No subsequent filings are provided for; nor are subsequent acts to be done, as a condition precedent to the right to do an extended business. This being true, the law has made no provision at all for the extension of a corporation's business; but, if appellants' argument is sound, a corporation could never extend its business beyond a single county it contemplated doing business in when it came into the state, unless at the time it filed its papers with the secretary of state it also filed like papers with every county recorder in the several counties of the state where its business might extend to. We do not believe the legislature contemplated any such policy, for, had they done so, they could easily have said that the papers provided for should be filed in each and every county in which the corporation intended to do business, or into which it might possibly thereafter extend its business. The words "the county" particularize that county where the corporation intends to carry on its business, while the words "each county" would mean *every* county in which they intended to do business, and, if extension was contemplated, a filing in every county into which extension might go would be essential, and all filings would have to be made before attempting to do business, or there could be no extension without violating the statute. It may be that the legislature assumed that a foreign corporation would do business in but the one county wherein it filed its statement and certificates. That is conjectural, however, and we shall not pursue the probability involved, but are thoroughly satisfied to hold to those rules of strict scrutiny which justify the reasonable and just construction by which the foreign and domestic corporations are put as near the same level as possible, where the purposes of the laws requiring the certificates and statements are substantially the same. (See Chapter XXV., Compiled Statutes of 1887.)

It is said that the word "county" should be read "county

or counties,'' in Section 442, under the rules of construction laid down in Section 539, page 201, First Division, and Sections 207, 208, page 649, Fifth Division, of the Compiled Statutes of Montana, and that when so read the legislative intent is made clear and may be effectuated.      The sections cited require that when any subject, matter, party, or person is described or referred to by words imparting the singular number, several matters and persons shall be deemed to be included, unless it be otherwise especially provided, or unless there be something in the subject or context repugnant to such construction.      The difficulty with this argument is that it requires the interpolation of words which, in our view, make the proposed amendment repugnant to the context, and to the real object of the statute as indicated above.      For this reason we are unable to construe the statute as suggested.

The question before us has been decided by Judge Knowles, of the United States court, who reached the same conclusion we do, saying:   ''In looking at the 442d section of Chapter XXIV, Compiled Laws of Montana, it will be observed that foreign corporations are to make the statement and record required thereby 'in the office of the secretary of the territory, and in the office of the county recorder of the county wherein they intend to carry on or transact business,' and the statement shall state the 'principal office or place of business.' There is no requirement that the record shall be made in every county wherein the said corporation may transact any business.   *   *   *   As it does not clearly state or imply that a foreign corporation should make the statement specified in said Chapter XXIV in each county of the state before doing business therein, it should not be so construed.   If the statute is complied with in filing the necessary statement in the office of the secretary of state, and in the county wherein the corporation has its principal office or place of business, it will be sufficient.''   (See *Black* v. *Caldwell,* 83 Fed. 883.)

The judgment is affirmed.

*Affirmed.*