[Criminal No. 691. Filed April 8, 1929.]

[276 Pac. 1.]

## THE GILA MEAT COMPANY, a Corporation, Appellant, v. STATE, Respondent.

See Licenses, 37 C. J., sec. 6, p. 170, n. 47, sec. 51, p. 197, n. 15. Taxation, 37 Cyc., p. 732, n. 93.

Mr. Charles L. Rawlins and Mr. George H. Rawlins, for Appellant.

Mr. K. Berry Peterson, Attorney General, and Mr. Lloyd J. Andrews, Assistant Attorney General, for the State.

LOCKWOOD, C. J.—The Gila Meat Company, Incorporated, hereafter called appellant, was convicted of a violation of paragraph 3741, Revised Statutes of Arizona of 1913, Civil Code, as amended by chapter 77, Session Laws of 1927, and has appealed from the judgment rendered against it to this court.

There is but one question involved, and that is whether the statute on which the conviction was based is constitutional. Said statute, so far as applicable, reads as follows:

"The Live Stock Sanitary Board may grant to applicants therefor, on the payment of the fees herein provided and the presentation of proof showing good moral character upon the part of the applicant, a license to slaughter cattle, sheep and goats, as may be set forth in such license so granted. If such slaughter business is to be carried on within, or within four miles of, any town of more than five thousand inhabitants, the applicant shall pay to such Board a sum equal to one hundred fifty dollars per annum for a license to operate such business of slaughtering, the same to be at a fixed and definite

slaughtering place; in the event that such slaughtering business is to be carried on within, or within four miles of, any town of three thousand or more inhabitants and less than five thousand inhabitants, then the applicant for such license shall pay the said Board at the rate of one hundred twenty dollars per annum for such license; in case the business is to be carried on within, or within four miles of, any town of one thousand or more inhabitants and less than three thousand inhabitants, the applicant shall pay to said Board at the rate of ninety dollars per annum for such license; all licenses to designate a fixed and definite place where such slaughtering is to be done; in all other cases an applicant shall pay at the rate of thirty dollars per annum for such slaughtering licenses. . . .

"It shall be a misdemeanor for any person to slaughter any animal of the kind mentioned in this act for sale for food, or to peddle or offer for sale any portion thereof, without first procuring one of the two classes of licenses in this paragraph specified. . . . "

It is the position of appellant that the quoted portion of the paragraph violates four distinct provisions of the Constitution of Arizona. We will consider the matter in the order which seems to us logical.

It is first claimed by appellant that the paragraph is a revenue and not a regulatory measure, and that therefore the principles of law applying to the exercise of the police power need not be considered. The state in its brief did not argue that the act was not a revenue measure, and the Attorney General on oral argument practically conceded that it was. Without discussing the matter in detail, we are of the opinion that, within the meaning of *Smith* v. *Mahoney,* 22 Ariz. 342, 197 Pac. 704, par. 3741, *supra,* is a revenue measure, and its constitutionality must be judged on that basis. Let us consider, then, the particular objections urged against it.

The first is that it is in contravention of section 1 of article 9 of the Constitution, which reads as follows:

"The power of taxation shall never be surrendered, suspended, or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only."

We think this contention cannot be sustained. Taxes are classified as poll, property and excise. The meaning of the first two classes is obvious. Excise has come to include every form of taxation which is not a burden laid directly on persons or property, and a tax on the privilege of engaging in an occupation is clearly an excise. *Birmingham* v. *Goldstein,* 151 Ala. 473, 125 Am. St. Rep. 33, 12 L. R. A. (N. S.) 568, 44 South. 113. While there are some states which under the peculiar wording of their Constitutions hold that excise taxes must be uniform in the same sense that those on polls and property are, the general rule is that such provisions do not refer to excise. *Magoun* v. *Illinois Trust & Sav. Bank,* 170 U. S. 283, 42 L. Ed. 1037, 18 Sup. Ct. Rep. 594; 26 R. C. L., par. 226, and cases cited. The Arizona constitutional provision quoted above on its face refers to "property." We have held that there is a substantial difference between property and excise taxes, and that section 9 of article 9 of the Constitution, which reads as follows: "Every law which imposes, continues, or revives a tax shall distinctly state the tax and the objects for which it shall be applied; and it shall not be sufficient to refer to any other law to fix such tax or object"—does not cover excise taxes. *Hunt* v. *Callaghan,* 32 Ariz. 235, 257 Pac. 648. If the general word "tax," as used in article 9, section 9, *supra,* does not include an excise tax, still less

would section 1 of article 9, *supra,* which expressly refers to "property" include it. We hold, therefore, that section 3741, *supra,* is not obnoxious to section 1 of article 9 of the Constitution.

The next provision of the Constitution which we consider is section 13 of article 2, which reads as follows:

"No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

We have discussed the general meaning of this section several times. One of the most recent cases is that of *State* v. *Childs and Rockwell,* 32 Ariz. 222,. 54 A. L. R. 736, 257 Pac. 366. Therein we said:

"We think the general rule contended for by defendants, to the effect that a statute allowing one class of persons to engage in what is presumptively a legitimate business, while denying such right to others, must be based upon some principle which may reasonably promote the public health, safety or welfare, that unless it does so in some degree it is unconstitutional, and that while every presumption is in favor of the validity of a statute, yet when it clearly appears that on no reasonable theory could such a one contribute to the public health or safety it is the duty of the courts to so declare and to set it aside as unconstitutional, is well taken. *Lawton* v.. *Steele,* 152 U. S. 133, 38 L. Ed. 385, 14 Sup. Ct. 499; *Dobbins* v. *Los Angeles,* 195 U. S. 223, 49 L. Ed. 169, 25 Sup. Ct. 18; *Ex parte Whitewell,* 98 Cal. 78, 35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870; 12 C. J. 930."

And again, in the later case of *Prescott Courier, Inc.,* v. *Moore et al., ante,* p. 26, 274 Pac. 163, we stated:

"The purpose of the constitutional provisions cited is to secure equality of opportunity and right to all

persons similarly situated. 12 C. J. 1112. The Legislature may classify, but the classification must be predicated on some reasonable basis, which will promote a legitimate purpose of legislation. 12 C. J. 1128.''

One of the ways in which special privileges or immunities may be granted is by an unequal imposition of taxes. As the Supreme Court of the United States said in the case of *McCulloch* v. *Maryland*, 4 Wheat. 316, 4 L. Ed. 579: ''The power to tax [is] the power to destroy.'' The legislature, therefore, may not impose an excise tax which is not uniform, unless the classification upon which the lack of uniformity is based is, as was said in *State* v. *Childs and Rockwell, supra*, ''some principle which may reasonably promote the public health, safety or welfare.''

The basis of the classification in the statute in question is the location of the business taxed, and there is no pretense that any sanitary or other rules beneficial to the public health are imposed as a condition of operation. The sole regulation provided by law is the inspection of hides to see that the animals slaughtered are not stolen, and a special flat inspection fee is charged for this inspection. And with this exception the state merely collects the tax and allows all slaughter-houses, wherever situated to operate as they may see fit.

It is urged that the statute bases the different rates of taxation provided therein on the amount of business done, the claim being that the slaughter-house nearer to the larger town will necessarily or presumably do more business than the one at a greater distance. And in support thereof, the case of *Toyota* v. *Hawaii*, 226 U. S. 184, 57 L. Ed. 180, 33 Sup. Ct. Rep. 47, is cited. The case is in point, and we have the highest respect for the decisions of the

tribunal which rendered judgment therein, but cannot agree with the conclusion reached. The precise question involved in this case was also raised in the case of *Hager* v. *Walker*, 128 Ky. 1, 129 Am. St. Rep. 238, 15 L. R. A. (N. S.) 195, 107 S. W. 254. The laws of Kentucky divided the cities of that state into some six classes, and the legislature provided for a tax upon real estate dealers based upon the class of the city wherein the business was carried on. The Kentucky statute was assailed upon practically the same grounds as is the Arizona one. The court of appeals of that state held as we do that the general provision requiring uniformity of taxation did not apply to excise taxes directly and specifically, but stated:

"It is entitled to serious consideration as indicating a purpose that all laws imposing taxes shall operate in a uniform manner, to the end that no favoritism can be shown or discrimination be practiced.

" . . . Although the Legislature may single out certain . . . classes of persons, trades, occupations, and professions, dealing with each class separately, yet the burden upon every person in the class thus selected must be the same. If it is imposed upon the person, it must be equal and uniform; and so if it is graduated according to the amount of business done."

The argument was made in that case, as in this, that the tax was in effect based on the amount of business done. The court in answering that suggestion, stated as follows:

"In the case before us no account is taken of the amount of business done, nor is it pretended that the lack of uniformity and equality in the tax imposed was made to depend upon the quantity of business transacted by the real estate agents taxed. The General Assembly, doubtless proceeding upon the idea that the real estate agents in large cities transacted a larger business than those engaged in smaller cities, imposed a heavier tax upon them; but this tax was

not fixed with reference, so far as the act shows, to the amount of business done. It may be, and probably is, true that some real estate agents in large cities do a larger business than real estate agents in smaller places; but it does not necessarily follow that there are not real estate agents in fourth class cities who do a larger business than real estate agents in second, or third, or even first class cities. . . .

"It is insisted for the state that a license fee or tax imposed for state purposes may be graduated alone by the population of the city or county in which such business may be conducted, or by the fact that the person from whom the fee is exacted resides or does business in one city or another, or in this county or that one but, as we have endeavored to point out, classification cannot be made on these lines. The purpose of this opinion is not to limit or restrict in any respect the power of the Legislature given to it under the section of the Constitution in question, or to deny to it the right to classify, divide, and select, in any reasonable manner it chooses, trades, occupations, or professions for taxation, or to prevent it from exempting entirely any one or more trades, occupations, or professions, but only to declare that when any trade, occupation, or profession is selected for taxation, the tax levied upon it, or the license fee exacted from persons engaged in it, must be equal and uniform throughout the state, whether the tax be upon the individual or the business."

We think the reasoning of the case thus cited is sound, and in accordance with the spirit of all our constitutional provisions bearing on the subject. There are many cases holding that a tax based upon the location of a particular business violates the special privilege clauses of the different Constitutions. *Ex parte Riley,* 39 Cal. App. 58, 177 Pac. 854; *Ex parte Robinson,* 68 Cal. App. 744, 230 Pac. 175; *State* v. *Osborne,* 171 Iowa 678, Ann. Cas. 1917E 497, 154 N. W. 294; *Chan Sing* v. *City of Astoria,* 79 Or. 411, 155 Pac. 378; *Rainey* v. *State,* 41 Tex. Cr. Rep.

254, 96 Am. St. Rep. 786, 53 S. W. 882; *Ex parte Blois,* 179 Cal. 291, 176 Pac. 449.

It appearing to us that paragraph 3741, *supra,* is a revenue act, that it imposes different taxes upon persons engaged in the same business without such difference being based upon a reasonable classification for purposes of the public health, safety or general welfare, and that it does in effect grant to certain citizens privileges and immunities which are not granted to others similarly situated on equal terms, we have no choice but to hold that such paragraph is unconstitutional. The judgment of the superior court is reversed, and the case remanded, with instructions to sustain the demurrer to the information and dismiss the action.

McALISTER and ROSS, JJ., concur.