**COMMONWEALTH OF PENNSYLVANIA
ex rel. SCHNADER, Atty. Gen., v. FIX,
et al., Collectors of Internal Revenue.**
No. 1092.

District Court, M. D. Pennsylvania.
Dec. 28, 1934.

See, also, 7 F. Supp. 729.

William A. Schnader, Atty. Gen., and Harris C. Arnold, Deputy Atty. Gen., for plaintiff.

Frank J. Wideman, Asst. Atty. Gen., and M. H. Eustace, Sp. Asst. to the Atty. Gen., and Frank J. McDonnell, U. S. Atty., and Leo G. Knoll, Asst. U. S. Atty., both of Scranton, Pa., for defendants.

WATSON, District Judge.

This action was brought in the court of common pleas of Dauphin county against Alvin F. Fix, David L. Lawrence, and Leo C. Mundy, collectors of internal revenue, and the case was thereafter removed to this court on petition of the defendants. Subsequently William J. Kyle, acting collector of internal revenue for the First district of Pennsylvania, and James L. O'Toole, Jr., collector of internal revenue for the Twenty-Third district of Pennsylvania, were substituted as defendants in place of Alvin F. Fix and David L. Lawrence, respectively.

The defendants have moved this court to dismiss the bill of complaint, for the reason, among others, that the bill sets forth no facts which, if true, would entitle the complainant to the relief prayed for.

The bill alleges that the defendants are collectors of internal revenue for the First, Twelfth, and Twenty-Third revenue districts, which include the entire area of the commonwealth of Pennsylvania; that, on November 29, 1933, the state Legislature passed an act designated as "Pennsylvania Liquor Control Act" (Act Pa. Nov. 29, 1933 [Sp. Sess.] P. L. 15 [47 PS Pa. § 744—1 et seq.]); that, by virtue of the authority of said act, the commonwealth of Pennsylvania is engaged in the operation of Pennsylvania liquor stores, and, in connection therewith, buys, possesses, and sells alcoholic, spirituous, vinous, and fermented liquors and other alcoholic beverages and combinations of liquors for beverage purposes; that the plaintiff operates 239 retail liquor stores and also 5 warehouses from which sales are made at wholesale; that said Pennsylvania Liquor Control Act is an exercise of the police power of the commonwealth of Pennsylvania for the protection of the public welfare, health, peace, and morals, and to prohibit the return of the saloon; that it constitutes a complete system for control of the importation, sale, and distribution of alcoholic liquors (except malt liquors) in the commonwealth; that the operation of said liquor stores and warehouses by the commonwealth is an integral part of said system or control; that, for the supervision and management of Pennsylvania liquor stores and warehouses, and generally for the administration of its liquor laws, plaintiff created the Pennsylvania liquor control board by the Act of November 29, 1933; that the plaintiff, acting through the Pennsylvania liquor control board, has employed various managers, assistant managers, and other persons to assist in the management and operation of the several Pennsylvania liquor stores and warehouses and of other facilities used in connection therewith; that, on January 12, 1934, the commonwealth of Pennsylvania held and was the owner, for purposes of sale, of approximately 1,000,000 gallons of wines, spirits, and liquors; that the defendants, purporting to act under the revenue laws of the United States, have demanded that the commonwealth pay certain liquor license fees on account of each of its stores and warehouses,

and also a floor tax on liquors owned and possessed by the commonwealth on the effective date of the Federal Liquor Taxing Act of 1934 (48 Stat. 313); that defendants have demanded that plaintiff register and make returns as retail and wholesale liquor dealers for purposes of special taxes, and have demanded that plaintiff pay all of said special taxes for its liquor stores and warehouses; that defendants have threatened to proceed to enforce against the plaintiff collection of said special taxes, and to invoke against it and its officers, agents, and employees the penalties provided by law in case plaintiff fails to make payment of the tax; that defendants have likewise notified plaintiff that they consider it liable to pay the floor tax imposed by the Liquor Taxing Act of 1934, and have declared their intention to enforce collection from, and penalties against, the plaintiff in case plaintiff fails to make payment of the taxes; that the plaintiff is not subject to the designated statutes of the United States, and is immune from any tax imposed thereby; and that the acts of Congress which imposed such taxes do not by their terms include a state, or its officers or employees, and were not intended to do so. The bill prays for an injunction restraining the defendants from taking any steps to collect said taxes. For present purposes, the provisions of the state act set forth in the bill to which I have just referred are all that require consideration.

The provisions of the federal statutes, so far as necessary to be stated, follow:

U. S. C., title 26, § 205, 26 USCA § 205 (R. S. § 3244, as amended):

"(a) *Retail Liquor Dealers.*—Retail dealers in liquor shall pay $25. Every person who sells or offers for sale foreign or domestic distilled spirits, wines or malt liquors otherwise than as hereinafter provided in less quantities than five wine gallons at the same time shall be regarded as a retail dealer in liquors."

"(b) *Wholesale Liquor Dealers.*—Wholesale liquor dealers shall each pay $100. Every person who sells, or offers for sale foreign or domestic distilled spirits, wines or malt liquors, otherwise than as hereinafter provided in quantities of not less than five wine gallons at the same time shall be regarded as a wholesale liquor dealer."

U. S. C., title 26, § 11, 26 USCA § 11 (R. S. § 3140, as amended by Feb. 27, 1877, c. 69, § 1, 19 Stat. 248): "* * * Where not otherwise distinctly expressed or manifestly incompatible with the intent thereof, the word 'person,' as used in this title, shall be construed to mean and include a partnership association, company or corporation, as well as a natural person."

U. S. C., title 26, § 254a, 26 USCA § 254a (Jan. 11, 1934, c. 1, title 1, § 10 (a), 48 Stat. 315): "Upon all distilled spirits produced in or imported into the United States upon which the internal-revenue tax imposed by law has been paid, and which, on January 12, 1934, are held by any person and intended for sale or for use in the manufacture or production of any article intended for sale, there shall be levied, assessed, collected, and paid a floor tax equal to the amount if any, by which the tax provided for under this chapter exceeds the tax so paid, not including in the computation of the tax so paid the 30 cent tax imposed by section 254 of this title."

U. S. C., title 26, § 451a, 26 USCA § 451a (Jan. 11, 1934, c. 1, title 1, § 10 (b), 48 Stat. 315): "Upon all articles specified in section 442 or 450 of this title produced in or imported into the United States upon which the internal-revenue tax imposed by law has been paid, and which, on January 12, 1934, are held by any person and intended for sale or for use in the manufacture or production of any article intended for sale, there shall be levied, assessed, collected, and paid a floor tax equal to the amount, if any, by which the tax provided for under such sections of this title exceeds the tax so paid, not including in the computation of the tax so paid the 30 cent tax imposed by section 254 of this title."

U. S. C., title 26, § 451b, 26 USCA § 451b (Jan. 11, 1934, c. 1, title 1, § 10 (c), 48 Stat. 315): "Upon all wines held by the producer thereof upon January 12, 1934, and intended for sale or for use in the manufacture or production of any article intended for sale, there shall be levied, assessed, collected, and paid a floor tax equal to the amount, if any, by which the tax provided for under section 443 of this title exceeds the tax paid upon the grape brandy or wine spirits used in the fortification of such wine."

U. S. C., title 26, § 254b, 26 USCA § 254b (Jan. 11, 1934, c. 1, title 1, § 10 (d), 48 Stat. 315): "The person required by sections 254a, 451a, and 451b of this title to pay any floor tax shall, within thirty days after January 12, 1934, make return under oath in such form and under such regulations as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe. Payment of the tax shown to be due may be extended to a date not exceeding

seven months after January 12, 1934, upon the filing of a bond for payment in such form and amount and with such sureties as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may prescribe. All provisions of law (including penalties) applicable in respect of internal-revenue taxes on distilled spirits or wines shall, in so far as applicable and not inconsistent with said sections, be applicable in respect of the taxes imposed by said sections."

U. S. C., title 26, § 241a, 26 USCA § 241a (Jan. 11, 1934, c. 1, title 1, § 10 (e), 48 Stat. 315): "As used in sections 254a, 254b, 267 to 270, 273, and 451a of this title, the term 'person' includes an individual, a partnership, an association, and a corporation."

U. S. C., title 26, § 242a, 26 USCA § 242a (Jan. 11, 1934, c. 1, title 1, § 10 (e), 48 Stat. 315): "As used in sections 254a, 254b, and 267 to 273 of this title, the term 'distilled spirits' includes products produced in such manner that the person producing them is a rectifier within the meaning of section 204 of this title."

The preliminary questions raised by the defendants were decided by this court in dismissing plaintiff's petition to remand the case to the court of common pleas of Dauphin county, Pa., where it was held that the cause is within the jurisdiction of this court.

■ The state challenges the validity of the tax, and that is the fundamental question here involved. The plaintiff seeks to invoke a principle resulting from our dual system of government, which is that "the instrumentalities, means and operations, whereby the states exercise the governmental powers belonging to them are * * * exempt from taxation by the United States." This principle has frequently been announced by the Supreme Court of the United States, and is firmly established. Collector v. Day, 11 Wall. 113, 20 L. Ed. 122; McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Indian Motocycle Co. v. United States, 283 U. S. 570, 575, 51 S. Ct. 601, 75 L. Ed. 1277. But this rule, by its terms, indicates that the exemption of state agencies and instrumentalities from national taxation is limited to those which are of a strictly governmental character, and does not extend to those which are used by the state in the carrying on of an ordinary private business. In South Carolina v. U. S., 199 U. S. 437, 26 S. Ct. 110, 117, 50 L. Ed. 261, 4 Ann. Cas. 737, it was held that: "It is reasonable to hold that, while the former [national government] may do nothing by taxa-tion in any form to prevent the full discharge by the latter [state] of its governmental functions, yet, whenever a state engages in a business which is of a private nature, that business is not withdrawn from the taxing power of the nation."

■ It is contended that the buying and selling of liquor by the state is a proper exercise of the police power of the state, and is the performance of a governmental function. It is argued that the police power may be developed and changed to meet changing conditions. While this is true, "Nevertheless the police power is and remains a governmental power, and applied to business activities is the power to regulate those activities, not to engage in carrying them on. Rippe v. Becker, 56 Minn. 100, 111, 112, 57 N. W. 331, 22 L. R. A. 857." Ohio v. Helvering, 292 U. S. 360, 54 S. Ct. 725, 726, 78 L. Ed. 1307.

In the case of Ohio v. Helvering, supra, it was held that: "If a state chooses to go into the business of buying and selling commodities, its right to do so may be conceded so far as the Federal Constitution is concerned; but the exercise of the right is not the performance of a governmental function, and must find its support in some authority apart from the police power. When a state enters the market place seeking customers it divests itself of its quasi sovereignty pro tanto, and takes on the character of a trader, so far, at least, as the taxing power of the federal government is concerned. Compare Georgia v. Chattanooga, 264 U. S. 472, 480–483, 44 S. Ct. 369, 68 L. Ed. 796; U. S. Bank v. Planters' Bank, 9 Wheat. 904, 907, 6 L. Ed. 244; Bank of Kentucky v. Wister, 2 Pet. 318, 323, 7 L. Ed. 437; Briscoe v. Bank of Kentucky, 11 Pet. 257, 323–325, 9 L. Ed. 709; Curran v. Arkansas, 15 How. 304, 309, 74 L. Ed. 705."

■ The decisions in the South Carolina Case and in the Ohio Case sustain the identical tax provisions involved in the present case excepting the floor tax provisions. I therefore follow those decisions as controlling, and hold that, since the state was not exempt from the tax, the statute reached the individual sellers who acted as disposers for the state.

It is insisted that the floor tax is unconstitutional as applied to Pennsylvania; that it is a tax upon the property of the state; that there can be no distinction between the liquor owned by the state and other property owned by the state. The question is, What is the nature of the tax. Obviously, the tax was intended by Congress as an excise tax.

The Constitution, art. 1, § 8, cl. 1, provides: "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States."

In Blackstone, vol. I, p. 318, an excise is defined: "An inland imposition, paid sometimes upon the consumption of the commodity, or frequently upon the retail sale, which is the last stage before the consumption." Cooley in his work on Taxation, p. 3, defines it as "an inland impost levied upon articles of manufacture or sale, and also upon licenses to pursue certain trades, or to deal in certain commodities." Webster's New International calls it: "A tax on the inland manufacture, sale, or consumption of commodities or for licenses to follow certain occupations, and these taxes are usually known as internal revenue taxes."

In the case of Patton v. Brady, Executrix, 184 U. S. 608, 22 S. Ct. 493, 496, 46 L. Ed. 713, it was held that the tax on manufactured tobacco is a tax on an article manufactured or for consumption, and imposed at a period intermediate the commencement of manufacture and the final consumption of the article, and that such tax is an excise. In that case Mr. Justice Brewer, in the opinion, said: "Ever since the early part of the Civil War there has been a body of legislation, gathered in the statutes under the title Internal Revenue, by which, upon goods intended for consumption, excises have been imposed in different forms at some time intermediate the beginning of manufacture or production and the act of consumption. Among the articles thus subjected to those excises have been liquors and tobacco, appropriately selected therefor on the ground that they are not a part of the essential food supply of the nation, but are among its comforts and luxuries. The first of these acts, passed on July 1, 1862 (12 Stat. 432), in terms provided for 'the collection of internal duties, stamp duties, licenses, or taxes imposed by this act,' and included manufactured tobacco of all descriptions. Subsequent statutes changed the amount of the charge, the act of 1890 reducing it to 6 cents a pound. Then came the act in question, which, for the purpose of providing means for the expenditures. of the Spanish War, increased the charge to 12 cents a pound, specifying distinctly that it was to be 'in lieu of the tax now imposed by law.' Nothing can be clearer than that in these various statutes, the last included among the number, Congress was intending to keep alive a body of excise charges on tobacco, spirits, etc. It may be that all the taxes enumerated in these various statutes were not excises, but the great body of them, including the tax on tobacco, were plainly excises within any accepted definition of the term."

■ I conclude, therefore, that the floor tax which is levied by this act is not a tax upon property of the state as such, but is an excise and property so called.

■ It is also contended that the floor tax is a direct tax, which must be apportioned among the states according to population. In Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 S. Ct. 673, 710, 39 L. Ed. 759, it was held: "That direct taxes, within the meaning of the constitution, are only capitation taxes, as expressed in that instrument, and taxes on real estate." As I have already held that the floor tax is an excise as such, it need not be apportioned.

■ I cannot agree with the contention that a state is not embraced within the meaning of the word "person" as used in U. S. C., title 26, § 205 (26 USCA § 205), and defined in section 11 of that title (26 USCA § 11), and as used in U. S. C., title 26, § 254a (26 USCA § 254a), and U. S. C., title 26, § 451a (26 USCA § 451a), U. S. C., title 26, § 254b (26 USCA § 254b), and defined in U. S. C., title 26, § 241a (26 USCA § 241a). In Ohio v. Helvering, supra, it was said: "By section 205 the tax is levied upon every 'person who sells, etc.'; and by section 11 the word 'person' is to be construed as meaning and including a partnership, association, company, or corporation, as well as a natural person. Whether the word 'person' or 'corporation' includes a state or the United States depends upon the connection in which the word is found. Thus, in Stanley v. Schwalby, 147 U. S. 508, 517, 13 S. Ct. 418, 37 L. Ed. 259, it is said that the word 'person' in the statute there under consideration would include the United States as a body politic and corporate. See, also, Giddings v. Holter, 19 Mont. 263, 266, 48 P. 8; State v. Herold, 9 Kan. 194, 199. A state is a person within the meaning of a statute punishing the false making or fraudulent alteration of a public record 'with intent that any person may be defrauded.' Martin v. State, 24 Tex. 61, 68. Under a statute defining a negotiable note as a note made by one person whereby he promises to pay money to another person, and providing that the word 'person' should be construed

to extend to every corporation capable by law of making contracts, it was held that the word included a state. Indiana v. Woram, 6 Hill (N. Y.) 33, 38, 40 Am. Dec. 378. And a state is a person or a corporation within the purview of the priority provisions of the Bankruptcy Act."

When a state engages in private business, it divests itself, so far as its transactions in that private business are concerned, of its sovereign character, and takes that of a private citizen. Instead of communicating to that private business its privileges and prerogatives, it descends to the level of a private citizen. As to the transactions in such private business, it cannot claim the privileges or immunities of a sovereign.

Great dangers would menace the revenues of the United States if the immunities from federal taxation here claimed should be indulged. These dangers are well stated by Justice Brewer in South Carolina v. United States, supra: "Obviously, if the power of the state is carried to the extent suggested, and with it is relief from all federal taxation, the national government would be largely crippled in its revenues. Indeed, if all the states should concur in exercising their powers to the full extent, it would be almost impossible for the nation to collect any revenues. In other words, in this indirect way it would be within the competency of the states to practically destroy the efficiency of the national government."

The acts in controversy, so far as the charges upon the plaintiff are concerned, are constitutional. The state itself, when it becomes a dealer in intoxicating liquors, falls within the reach of the tax as a person. The bill fails to set forth facts which would entitle the complainant to the relief prayed for.

Now, December 28, 1934, plaintiff's bill of complaint as amended is dismissed, and the preliminary injunction granted January 31, 1934, is dissolved.