[Civil No. 3677.   Filed December 7, 1936.]

[62 Pac. (2d) 1126.]

STULTS EAGLE DRUG COMPANY, a Corporation, Appellant, v. FRANK LUKE, THAD MOORE and D. C. O'NEIL, as Members of the Tax Commission of the State of Arizona, Appellees.

Mr. F. C. Struckmeyer and Mr. J. Bolivar Sumter, for Appellant.

Mr. John L. Sullivan, Attorney General, and Mr. Dudley W. Windes, Special Assistant Attorney General, for Appellees.

ROSS, J.—The Stults Eagle Drug Company, the owner and operator of a drug store in the city of Phoenix, by this proceeding seeks to enjoin and restrain the State Tax Commission from enforcing that portion of chapter 78, Laws 1935, making it the duty of the Tax Commission to collect a luxury tax, "for the purpose of raising public money to provide unemployment and welfare relief" (art. 2, § 1), on the plaintiff's sales of cosmetics, toilet preparations, cigars, cigarettes, chewing tobacco, playing cards, and golf equipment. The ground upon which the relief is asked is that the law is in conflict with certain provisions of the state and federal Constitution.

The defendants demurred to the complaint and the demurrer was sustained and the case dismissed, whereupon the plaintiff appealed. The grounds of its appeal are:

(1) That the tax in its practical operation is a property tax and not uniform upon the same class of property within the territorial limits of the state, as required by section 1, article 9, of the state Constitution.

(2) That the classification of the property is arbitrary, unreasonable, and discriminatory and has no reasonable relation to the purpose of the act, violating section 13, article 2, of the state Constitution and denying to the plaintiff equal protection of the laws guaranteed by the Fourteenth Amendment to the federal Constitution.

(3) That the exemption from the tax of articles selling for 10 cents or less, as enumerated in subdivisions (k), (l) and (m), section 1, article 2, violates the uniformity provisions of the state Constitution and the equal protection provision of the Fourteenth Amendment to the federal Constitution.

The tax is "in addition to all other taxes" and covers the articles enumerated above and all malt extracts, derivatives or combinations thereof used for beverage purposes, all spirituous, vinous, and malt liquors. The method of collecting the tax is the simple one of requiring the retailer or wholesaler to buy stamps of the proper denomination from the Tax Commission and attach them to the articles sold, in amount sufficient to cover the tax as specified in the act. All the goods upon which the tax is levied are defined as luxuries. They are subdivided into classes from (a) to (m) inclusive, section 1, article 2. And upon each class is imposed the rate of tax to be paid. No tax is imposed on sales of cosmetics, toilet preparations, playing cards, films for commercial use, golf or polo equipment, fishing tackle and fishing accessories, or shotgun shells where the price is 10 cents or under. Subdivisions (k), (l) and (m), *supra*.

The tax on some of the articles is upon quantity (subds. (a), (b), (c), (d), (e), (f), (g), (h), (i), (j) and others upon the sales price (subdivisions (k), (l), (m), § 1, art. 2) and in the latter the tax is a percentage of the sales price.

Section 4 (of article 2) of the act we here set out in full because much is made of the operation of its provisions by the plaintiff:

"Sec. 4. *By Whom Stamps Shall be Affixed.* (a) Unless they have been previously affixed, or the rules and regulations of the commission shall otherwise prescribe, the stamps required by this article shall be affixed by the wholesaler, and cancelled by writing across the face thereof the name of the wholesaler prior to the delivery to any other person of any luxury upon which a tax is imposed by this article.

"(b) Immediately upon the receipt by a retailer, of any luxury upon which a tax is imposed by this article, said retailer shall affix the proper stamps to each package or container, unless they have been previously affixed thereto, or in case of an unopened box, carton, or other container of such luxuries, by writing the word 'received' thereon and the hour, day, month, and year of such receipt and affixing his signature thereto. He shall in any event open such box, carton or other container and affix the proper stamps to each package therein, prior to offering for sale any luxury upon which a tax is imposed by this act."

One of the contentions of counsel for plaintiff, if we correctly understand them, is that the tax here imposed is a property tax and should therefore conform with the uniformity provision of the Constitution by being levied alike upon the entire property of the state. It is said by plaintiff that section 4, (article 2), *supra,* requires the retailer to affix stamps to the so-called luxuries whenever and for whatever purpose he may open the box, carton, bottle, or other container in which the luxuries are packed when he receives them from the manufacturer or wholesaler; that no provision is made for the redemption of stamps affixed to luxuries which for any reason are not sold; that the retailer is obliged to pay it whether he sells his merchandise or not; that he must leave his merchandise, on its receipt in bulk, unpacked, or, if he

would place it on the counters, shelves, or showcases, he must pay the tax before doing so; that under this statute, the moment a retailer opens a box, carton, or container in which the article is packed, he must pay the tax; that he cannot await a customer and the consummation of a sale; and that if he is caught with any unstamped luxuries in his possession which are not in an unbroken container he is guilty of a misdemeanor. For all these reasons, it is urged the tax is a property tax.

The whole context of the act shows that its purpose is to impose a tax on the act of selling the luxuries to the customers for consumption and not on the thing sold. In order to assure the payment of the tax, certain rules and regulations are prescribed and penalties fixed for their nonobservance. The merchant may carry as large a stock as he pleases in his storeroom, provided the box, carton, package, or other container in which the taxable article comes is not broken. We know no reason why he may not order his goods shipped or delivered in containers the contents of which are not in excess of his immediate needs. For instance, take the example given by plaintiff of a merchant who wants 128 ounces of perfume, to sell at $5 per ounce. He need not order it in one container, so that if he opens it he would have to stamp the container with 10 per cent. of its sale price, or the sum of $64, but on the contrary he could order it in as many bottles or containers as he sees fit and without, we surmise, very much additional cost. Nor should he be much upset if, when he opens a box of fifty cigars, selling for 5 cents or more each, he must affix to the box 50 cents in stamps, as it is certain he will soon have his 50 cents back from the consumer. Of a somewhat similar contention, the court said in *Lionel's Cigar Store* v. *McFarland,* 162 La. 956, 111 So. 341, 349:

"It is true that the statute makes no provision for indemnifying a retail dealer whose stamps may be lost, destroyed or stolen, or left over when they will be no longer required, or pasted and wasted on a package afterwards shipped to a customer in another state; but those are risks which the retail dealer must protect himself against, the same as he must guard against the loss, destruction or theft of his bread tickets, currency, and the like."

It seems to us a reasonable construction of the act is that the tax stamp is not required to be affixed to the "box, carton or other container" in which the retailer receives the luxuries but only to the articles taken therefrom and offered for immediate sale. It may happen that some of the articles stamped and exposed for sale by the retailer will never be sold. In the course of business it would be remarkable if there were no leftovers upon which the tax had been paid by the retailer or wholesaler, but this incident would not convert what otherwise would be an excise into a property tax.

The requirement that the tax be affixed to the article prior to offering it for sale is a mere regulation adopted to facilitate the transfer to the buyer and to prevent evasions or oversights. The merchant dealing in luxuries is, in effect, constituted a tax collector for the state and if, in the performance of the duty imposed, he should sustain slight losses or inconveniences, they are mere incidents of his business.

We are satisfied that the tax is not a property tax but rather that it is an excise tax. It is not fixed according to the value of the article as ascertained by an assessor. If it is liquors, the tax is arrived at by the number of ounces sold. Likewise, if it is tobacco, except if it be in the form of cigars and cigarettes, then the tax is so much per cigar or package of cigarettes. If cosmetics or toilet preparations, or play-

·ing cards, or films, golf or polo equipment, fishing tackle, etc., the tax is so much on the retail price of the article.

In its practical workings the tax is a sale or privilege tax and is fixed by the legislature. The title of chapter 78 reads:

"An act relating to taxation, and to provide for the raising of additional public revenue for unemployment and welfare relief by imposing a tax on the *sale* of certain luxuries and by imposing a *privilege tax* on the *privilege of engaging in* certain businesses, and declaring an emergency." (Italics ours.)

Thus the tax is designated a *sales tax* and the right purchased by the tax is "the privilege of engaging in" the business of selling the luxuries named. Throughout the chapter's context the legislature has emphasized the thought that the tax is on the privilege of selling the luxuries to the customer for consumption. While these declarations of legislature are not conclusive, some effect is given to them by the courts in determining whether the tax is a property tax or an excise tax. *Ingels* v. *Riley,* 5 Cal. (2d) 154, 53 Pac. (2d) 939, 942, 103 A. L. R. 1. Some of the features that distinguish a property tax from an excise tax were pointed out by the Supreme Court to be (as restated by the annotator at page 19, 103 A. L. R.) as follows:

"An excise and a property tax, when the two approach each other, ordinarily may be distinguished by the respective methods adopted of laying them and fixing their amounts. If a tax is imposed directly by the legislature without assessment, and its sum is measured by the amount of business done or the extent to which the conferred privileges have been enjoyed or exercised by the taxpayer, irrespective of the nature or value of the taxpayer's assets, it is regarded as an excise; but if the tax is computed upon a valuation of property, and assessed by assessors

either where it is situated or at the owner's domicil, although privileges may be included in the valuation, it is considered a property tax." *Society for Savings* v. *Coite,* 6 Wall. 594, 18 L. Ed. 897.

To these distinctions should be added those made in *Ingels* v. *Riley, supra,* as follows:

"Generally speaking, the function of a property tax is to raise revenue. Such a tax does not impose any condition nor does it place any restriction upon the use of the property taxed. A privilege tax, although also passed to raise revenue, and as such is to be distinguished from the license tax or regulatory charge imposed under the state's police power, is imposed upon the right to exercise a privilege, and its payment is invariably made a condition precedent to the exercise of the privilege involved."

The tax is not laid on the person, as is a capitation tax, nor is it laid upon the luxury goods, but upon their sale. It must be then an excise tax under the rule stated in *Gila Meat Co.* v. *State,* 35 Ariz. 194, 276 Pac. 1, 2, for there we said:

"Excise has come to include every form of taxation which is not a burden laid directly on persons or property, and a tax on the privilege of engaging in an occupation is clearly an excise."

The provision of section 1, article 9 of the Constitution, that "All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax," is a property or poll tax limitation and has no reference whatever to excise. Of course under general law the burden imposed shall fall alike on all business or parties in the same situation. *Gila Meat Co.* v. *State, supra;* 26 R. C. L. 255, § 226.

The legislature's classification of selected property as luxuries for the purpose of imposing the tax is objected to as arbitrary, unreasonable, and dis-

criminatory—"having no reasonable relation to the purpose of the act." The act is for that reason, plaintiff contends, violative of section 13, article 2, of the Constitution, reading:

"No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

Chapter 78 operates alike upon all persons in the same class. Every person selling the luxuries defined is required to pay the tax. None is immune from it and everyone may, on the same terms, engage in the business. Equality of opportunity is secured to all persons and corporations similarly situated, and that is all that said constitutional provision undertakes to guarantee.

Section 12, article 9 of the Constitution provides:

"The law-making power shall have authority to provide for the levy and collection of license, franchise, gross revenue, *excise* . . . or other specific taxes." (Italics ours.)

In the exercise of this plenary power the legislature may select certain classes of privileges, businesses, or occupations and leave others untaxed. As is said by Cooley in his work on Taxation, fourth edition, volume IV, section 1685:

"All occupations need not be taxed. One or more may be taxed and others not taxed. The sovereignty may, in the discretion of its legislature, levy a tax on every species of property within its jurisdiction, or, on the other hand, it may select any particular species of property, and tax that only, if in the opinion of the legislature that course will be wiser. And what is true of property is true of privileges and occupations also; the state may tax all, or it may select for taxation certain classes and leave the others untaxed. Considerations of general policy determine

what the selection shall be in such cases, and there is no restriction on the power of choice unless one is imposed by constitution. Constitutional provisions requiring equality and uniformity of taxation do not apply to this kind of taxes, and there need be no uniformity as between different occupations.''

The text in 26 Ruling Case Law, 257, section 227, is as follows:

''It is for the legislature to determine the subjects of excise, and it may tax such acts, privileges and occupations as it sees fit, and leave other acts, privileges and occupations untaxed which might with equal propriety be called upon to bear their share of the public burden.''

This text is abundantly supported by the cases cited. See, also, 61 C. J. 81, 82, 83, § 10; *Fleischmann* v. *Conway*, 168 La. 547, 122 So. 845; *Ex parte Asotsky*, 319 Mo. 810, 5 S. W. (2d) 22, 62 A. L. R. 95 and note; *Lionel's Cigar Store* v. *McFarland, supra; Exchange Drug Co.* v. *State Tax Com.*, 218 Ala. 115, 117 So. 673.

It is common knowledge that at the time the legislature enacted chapter 78 there were many of our citizens unemployed and others actually in distress for the common necessities of life. The purpose of this legislation was to secure funds with which to give employment to the unemployed and to succor and care for those in actual need. The legislature, in its discretion, chose to secure the funds for these purposes from those persons engaged in selling to the general public what it has classed as luxuries, rather than placing the burden upon the necessities of life, such as food, clothing, shelter, and medical necessities, and this undoubtedly the legislature had the power to do.

It is further contended that plaintiff and others similarly situated are denied the equal protection of the law guaranteed by the Fourteenth

Amendment to the federal Constitution, in this, that the tax imposed by subsections (k) and (1), article 2 (Laws 1935, chap. 78), are not uniform upon all persons and property within the classes selected for taxation. The subsections referred to impose a tax of 2 cents for each 20 cents or major fraction thereof of the retail price of the articles enumerated. Under these subsections anything selling for 10 cents or less is not taxed, that is, the plaintiff and others similarly situated, as well as chain and dime store and other merchants, may sell and retail articles of the kind mentioned without paying the tax if the selling price is 10 cents or less. We are at a loss to see where there is a lack of uniformity, granting that the rule applies, where all wholesalers and retailers are treated alike. The federal guarantee contained in the Fourteenth Amendment

"was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products."

*Bell's Gap. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 10 Sup. Ct. 533, 535, 33 L. Ed. 892. See, also, Cooley on Taxation, 4th ed., vol. I, p. 535, § 249.

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.