481 P.2d 288

Jerry ROSELAND, Howard Krueger and Norman Conkle, Appellants,

v. ,

CITY OF PHOENIX, a municipal corporation and Jack Urie, Finance Director of the City of Phoenix, Appellees.

No. 1 CA–CIV 1255.

Court of Appeals of Arizona, Division 1, Department A.

March 3, 1971.

Rehearing Denied April 1, 1971.
Review Denied May 25, 1971.

George Mariscal, Cavness, DeRose & Senner, by Jack C. Cavness and John W. Rood, Phoenix, for appellants.

Joe R. Purcell, Phoenix, Robert J. Backstein, Former Phoenix City Atty. by Westlyn C. Riggs, Phoenix, for appellees.

MELVYN T. SHELLEY, Superior Court Judge.

The City of Phoenix, hereinafter called appellee, a municipal corporation, by Ordinance G–922, enacted with the emergency clause on 6 May 1969 and approved that same date, provided for a tax on tobacco and all forms of alcoholic and malt beverages.

The ordinance was attacked by the appellants, who were the plaintiffs in the Superior Court in Maricopa County, wherein the appellants asked that the ordinance be declared null and void and the Superior Court, upon a hearing for preliminary injunction, gave judgment in favor of the defendant, the city, and dismissed the complaint.

Notice of appeal was filed and three questions were presented for review.

The first question presented is: Is the tax imposed in violation of the Constitution of Arizona and the Charter of the City of Phoenix, in that the taxes are not uniform?

The ordinance in question requires everyone selling or offering for sale in the city cigarettes or malt extracts as therein defined and every retailer selling or offering for sale in the city spirituous liquors, vinous, and malt liquors on which a tax is imposed by the ordinance to obtain an annual license for one dollar and to pay on malt liquor extracts, etc., spirituous, vinous, and malt liquors and on all cigarettes the following taxes:

"(1) On each pound of sixteen ounces or fractions thereof of all malt extracts, or derivatives or combinations thereof, except malt used in the manufacture of bread and dextrines of malt used for feeding infants and invalids, seven and one-half cents but the license tax imposed by this paragraph shall be refunded when the amount thereof has been paid, and when proof is thereafter made to the City that the malt extract, or derivative or combination thereof, has been used for other than preparation of a beverage.

"(2) On each sealed container of spirituous liquor containing eight ounces or less, six and one-fourth cents, and for each eight ounces for containers containing more than eight ounces, six and one-fourth cents.

"(3) On each container of vinous liquor of which the alcoholic content is not greater than twenty-four per cent by volume, containing sixteen ounces or less, two and five-eighths cents, and for each sixteen ounces for containers containing more than sixteen ounces, two and five-eights cents.

"(4) On each container of vinous liquor of which the alcoholic content is greater than twenty-four per cent by volume, containing eight ounces or less, six and one-fourths cents, and for each eight ounces for containers containing more than eight ounces, six and one-fourth cents.

"(5) On each gallon of malt liquor, four cents.    .

'(6) On each twenty cigarettes or fractional part thereof, five cents." Phoenix City Code (Code 1962 § 14-64)

With respect to spirituous, vinous, or malt liquors, every person in the city purchasing such for sale to the consumer is required to put the stamps on all such liquors so purchased, with the stamps to be prepaid, upon receipt of the same.

With respect to cigarettes, every wholesaler is required to put the prepaid stamps on all cigarettes sold or delivered by the wholesaler within the city and any retailer who buys or acquires cigarettes for sale within the city on which the stamps have not been affixed is required within 48 hours after receipt to affix the stamps to the same and report the omission to the city.

This ordinance has to do with persons, wholesalers and retailers, selling within the City of Phoenix.

Appellant, with respect to Question No. 1 contends: That, since the stamps have to be placed upon the containers with respect to liquors upon receipt and since the stamps have to be placed on the cigarettes by the wholesaler before any sale or delivery and requiring the retailer to affix the same within 48 hours if the wholesaler has not done so, that this constitutes a tax on property and not an excise tax. They further contend that, as a property tax, it would be in violation of the Arizona Constitution and the Charter of the City of Phoenix on the grounds that the taxes are not uniform as is required for property taxes.

Appellee contends that this provision is no different than the one in the Arizona Code, which was in effect at the time the case of Stults Eagle Drug Co. v. Luke, 48 Ariz. 467, 62 P.2d 1126 (1936), was decided by the Arizona Supreme Court. The Court, in reading the 1935 Session Law to which the Stults case refers, finds that said provision did not require the placement of stamps upon receipt of the articles by the retailer with respect to unopened boxes or cartons or other containers of such luxuries but only required them to be affixed at the time that such cartons, boxes, or containers were opened for sale. Thus, we have squarely before us whether or not this difference, which was referred to directly in the Stults case, is sufficient to make this particular tax a property rather than an excise tax.

It is true that the Court in the Stults case relied on and treated this as one of its prime reasons for that decision. However, the Court did not say in the Stults case that the result would have been different under the type of provision that we have here. In the Stults case the Arizona Supreme Court said, referring to the tax imposed by the 1935 law:

"It is not fixed according to the value of the article as ascertained by an assessor. If it is liquors, the tax is arrived at by the number of ounces sold. Likewise, if it is tobacco, except if it be in the form of cigars and cigarettes, then the tax is so much per cigar or package of cigarettes." 48 Ariz. at 473, 62 P. 2d at 1129.

Then the Court held that this was a criterion to consider in determining whether or not it was an excise case. The method of determining the amount of the tax is the same in appellees' ordinance as in the 1935 law so this same criterion exists in and applies to the ordinance in question. It is clearly a tax on the privilege of selling luxuries to the customer for consumption. Also from the Stults case we read:

"Some of the features that distinguish a property tax from an excise tax were pointed out by the Supreme Court to be (as restated by the annotator at page 19, 103 A.L.R.) as follows:

'An excise and a property tax, when the two approach each other, ordinarily may be distinguished by the respective methods adopted of laying them and fixing their amounts. If a tax is imposed directly by the legislature without assessment, and its sum is measured by the amount of business done or the extent

to which the conferred privileges have been enjoyed or exercised by the taxpayer, irrespective of the nature or value of the taxpayer's assets, it is regarded as an excise; but if the tax is computed upon a valuation of property, and assessed by assessors either where it is situated or at the owner's domicil, although privileges may be included in the valuation, it is considered a property tax.' Society for Savings v. Coite, 6 Wall. 594, 18 L.Ed. 897.

"To these distinctions should be added those made in Ingels v. Riley, [5 Cal.2d 154, 53 P.2d 939] *supra,* as follows:

'Generally speaking, the function of a property tax is to raise revenue. Such a tax does not impose any condition nor does it place any restriction upon the use of the property taxed. A privilege tax, although also passed to raise revenue, and as such is to be distinguished from the license tax or regulatory charge imposed under the state's police power, is imposed upon the right to exercise a privilege, and its payment is invariably made a condition precedent to the exercise of the privilege involved.'

"The tax is not laid on the person, as is a capitation tax, nor is it laid upon the luxury goods, but upon their sale. It must be then an excise tax under the rule stated in Gila Meat Company v. State, 35 Ariz. 194, 276 P. 1, 2, for there we said:

'Excise has come to include every form of taxation which is not a burden laid directly on persons or property, and a tax on the privilege of engaging in an occupation is clearly an excise.' " 48 Ariz. at 474, 475, 62 P.2d at 1129, 1130.

In the case of Commonwealth of Pennsylvania ex rel. Schnader v. Fix, 9 F.Supp. 272 (M.D.Penn.1934), the United States collected a tax against the State of Pennsylvania which operated several liquor stores on a state basis, together with warehouses and other facilities. It had on hand one million gallons of wine, spirits, and liquors when the United States demanded that it pay certain liquor license fees on account of each of its stores and warehouses and also a *floor tax* on liquors owned and possessed by the Commonwealth on the effective date of the act. It was the position of the State of Pennsylvania that the floor tax was unconstitutional as being a tax on the property of the state and therefore the property of a sovereign. The Court held that the tax was intended by Congress to be and was an excise tax. That Court said:

"In the case of Patton v. Brady, Executrix, 184 U.S. 608, 22 S.Ct. 493, 496, 46 L.Ed. 713, it was held that the tax on manufactured tobacco is a tax on an article manufactured or for consumption, and imposed at a period intermediate the commencement of manufacture and the final consumption of the article, and that such tax is an excise. In that case Mr. Justice Brewer, in the opinion, said: 'Ever since the early part of the Civil War there has been a body of legislation, gathered in the statutes under the title Internal Revenue, by which, upon goods intended for consumption, excises have been imposed in different forms at some time intermediate the beginning of manufacture or production and the act of consumption. Among the articles thus subjected to those excises have been liquors and tobacco, appropriately selected therefor on the grounds that they are not a part of the essential food supply of the nation, but are among its comforts and luxuries. The first of these acts, passed on July 1, 1862 (12 Stat. 432), in terms provided for "the collection of internal duties, stamp duties, licenses, or taxes imposed by this act," and included manufactured tobacco of all descriptions. Subsequent statutes changed the amount of the charge, the act of 1890 reducing it to 6 cents a pound. Then came the act in question, which, for the purpose of providing means for the expenditures of the Spanish War, increased the charge to 12 cents a pound, specifying distinctly that it was to be "in lieu of the tax now imposed by law."

Nothing can be clearer than that in these various statutes, the last included among the number, Congress was intending to keep alive a body of excise charges on tobacco, spirits, etc. It may be that all the taxes enumerated in these various statutes were not excises, but the great body of them, including the tax on tobacco, were plainly excises within any accepted definition of the term.'

"I conclude, therefore, that the floor tax which is levied by this act is not a tax upon property of the state as such, but is an excise and property so called." 9 F.Supp. at 276.

This case, of course, is directly in point because it involves a large amount of stored articles in a warehouse, which were not, at the time, being offered for immediate resale.

In the case of Lionel's Cigar Store v. Mc-Farland, 162 La. 956, 111 So. 341 (1927), a tax was placed upon retail dealers selling all forms of tobacco and tobacco products with payment of the tax to be evidenced by stamps to be affixed "as soon as the goods are received in the retail place of business." There the same contention was made to the effect that the tax is a tax on the ownership of tobacco and tobacco products and therefore is a property tax. The Court stated that the law itself provided that the tax was to be paid and collected from all those engaged in selling any or all such forms and kinds of tobacco, tobacco products, and tobacco substitutes at retail; that it left no doubt that the tax is levied not on the right of ownership but on the right to sell at retail, being collectable only from persons, firms, corporations, and associations of persons engaged in selling tobacco and tobacco products at retail. The Court further held that the tax was an excise or license tax on the privilege of selling tobacco or tobacco products at retail and not a proportion of the value of the property or levied upon the right to own it but a proportion of the retail selling price, levied on the right to sell it at retail. This is also the situation

with the case at bar. Further, from the Lionel's Cigar Store case we read:

"The incident or feature that makes the tax a license tax and not a property tax is that it is not levied on or collectable from the owner of the property unless he is engaged in the business of selling it at retail, and that it is levied and collected then only in proportion, approximately, to the amount of the retail sales." 162 La. at 966, 111 So. at 344.

The case of Barnes v. Stout, 65 S.D. 592, 276 N.W. 920 (1937), from the State of South Dakota, deals with a tax imposed upon all stocks of liquors in possession or under the control of retail dealers on July 1, 1937. Again, the contention made was that this was a property tax and not an excise tax and the Court said:

"The tax in dispute is not on the product. It is not on the right of ownership but is collectible only from those who are engaged in the business of selling intoxicating liquor." 65 S.D. at 595, 276 N.W. at 921.

The Court therefore held that the same was an excise and not a property tax.

In the case of Mount Tivy Winery, Inc. v. Lewis, 42 F.Supp. 636 (N.D.Calif.1942), the same contention was rejected.

This Court therefore concludes that the tax imposed by the city ordinance is an excise and not a property tax and the Stults case clearly holds:

"The provision of section 1, article 9 of the Constitution, that 'All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax,' is a property or poll tax limitation and has no reference whatever to excise. Of course under general law the burden imposed shall fall alike on all business or parties in the same situation. Gila Meat Company v. State, *supra*; 26 R.C.L. 255, § 226." 48 Ariz. at 475, 62 P.2d at 1130.

The second question presented in this appeal is as follows: Is the tax sought to be imposed so vague and ambiguous in the manner of its enforcement and applica-

tion and in the manner of penalty as to be unconstitutional?

The appellants set out various claims with respect to the foregoing question. First, they contend that there is confusion in determining when the tax on the cigarettes is to be paid as to time and by whom.

A study of the ordinance shows that the wholesaler is supposed to purchase, in advance of placement, the stamps either through a registered stamp meter or in actual stamps and to place the stamps, or an imprint from the stamp meter, on the cigarettes and to see that they are on at the time of sale within the city. If a retailer within the city receives the cigarettes without the stamps being placed thereon, he is to place the same on within 48 hours.

Clearly then, if the stamps or the registered stamp meter are to be purchased and paid for in advance, the tax is then paid as to all items on which they are placed. The ordinance clearly provides for the keeping of records for a period of three years with respect to sales subject to inspection by the city. In addition, the city would certainly have the authority to set up rules and regulations with regard to the matter if needed.

█ The appellant next contends that there is a provision for redemption of unused stamps but it does not say whether on the basis of the original purchase price to the purchaser or at one hundred percent of face value. The very word "redeem," in the opinion of the Court, means to get back what one has put into an item and is self-explanatory. Words and Phrases states that the word "redeem" means to purchase back or repurchase.

█ Another contention with regard to Question No. 2 is with respect to an asserted vagueness concerning penalties since the ordinance merely states that a person, if he fails to do certain things, is guilty of a misdemeanor, without setting out what the potential penalty would be. Section 1–5 of the 1962 Code of the City of Phoenix contains provisions which have an import similar to the provisions of A.R.S. § 13–1645. City Code § 1–5 fixes a penalty of "a fine not exceeding three hundred dollars or for a term not exceeding six months, or both such fine and imprisonment, in the discretion of the City Magistrate" for those misdemeanor offenses created by the ordinances of the City of Phoenix in relation to which no specific penalty is set forth. This Code having been published more than three years ago, Rules 44(o) and 44(n) of the Rules of Civil Procedure, 16 A.R.S., authorizes this Court to take judicial notice of City Code § 1–5. In our opinion, the foregoing is an adequate answer to the contention that the ordinance in question is vague.

█ Question No. 3 is: Is the ordinance enacted in violation of Article IV, pt. 2, § 13 of the Constitution of the State of Arizona, A.R.S.?

This issue was not raised before the Superior Court and was raised here for the first time on appeal. It is clearly the law that constitutional questions must first be presented to the trial court for determination before the appellate court will consider the question, unless the matter is one of public policy or broad, general *state-wide* concern. The case of Arnold v. Knettle, 10 Ariz.App. 509, 460 P.2d 45 (1969), held that where a United States Supreme Court decision came out after the trial in Superior Court and even after the filing of the briefs in the appellate court, which Supreme Court decision declared a garnishment statute similar to the garnishment statute in the State of Arizona and which was involved in the Arnold case to be unconstitutional, that the same could be raised in the appellate court. They did so on the grounds that the constitutionality of the garnishment statute of the State of Arizona was one which was of broad, general state-wide concern. Further, since the United States Supreme Court felt that it was a question important enough to be reviewed, then the Arizona Court of Appeals should consider the question one of such importance that it should be reviewed. None of these elements are here existing.

In the Arnold case, the attorneys could not have known of the United States Supreme Court decision during the time that the same was in Superior Court and even at the time of filing their briefs.

In the Arnold case, the question of the constitutionality of the garnishment statute affected the entire State of Arizona and had a potential effect with regard to all credit collection efforts involving every business and every individual who might become a creditor within the entire State of Arizona. Here, the issue is limited strictly to the City of Phoenix and cannot therefore be said to be of general state-wide concern.

The Court declines to consider Question No. 3 as it was raised too late.

Affirmed.

STEVENS, P. J., and DANOFRIO, J., concur.

NOTE: The Honorable JAMES DUKE CAMERON was a member of Department A of this Court at the time the appeal was argued. He requested that he be relieved in this cause and The Honorable MELVYN T. SHELLEY, a Judge of the Superior Court, was called to sit in his stead.